GRIFFIS, J.,
 

 for the Court.
 

 ¶ 1. Following a jury trial, Steven Wayne Pierce was found guilty of sexual battery pursuant to Mississippi Code Annotated section 97 — 3—95(l)(d) (Rev.2006). He was sentenced to serve twenty-five years in the custody of the Mississippi Department of Corrections. On appeal, he argues the following errors: (1) he was irreparably and unfairly prejudiced when the trial court allowed inadmissible hearsay over the objection of his attorney; (2) the State failed to prove beyond a reasonable doubt that he inappropriately touched the alleged victim; thus, the evidence was insufficient to find him guilty of sexual battery; and (3) the verdict was against
 
 *643
 
 the overwhelming weight of the evidence. Finding no reversible error, we affirm.
 

 FACTS
 

 ¶ 2. Pierce was indicted by a Panola County grand jury on the charge of sexual battery. The indictment alleged that Pierce put his tongue in Katie’s
 
 [1]
 
 vagina, that Katie was under the age of fourteen, and that Pierce was eighteen years of age or older. It was alleged that six-year-old Katie told her mother that Pierce took her into his trailer and licked her bottom.
 

 ¶ 3. Pierce was a neighbor of Katie’s family and lived in a trailer on the same road. Another neighbor, Stacey Abies, testified that she had seen Katie go into the trailer with Pierce on multiple occasions; and Pierce would cover the windows.
 

 ¶ 4. After Katie reported the incident, her mother contacted the police who recommended that Katie be seen by Dr. Tanya King. Dr. King testified as an expert witness in the field of pediatrics and child sexual abuse. During her examination of Katie, she utilized the RATAC protocol recommended in situations where child sexual abuse is suspected. The protocol requires the examiner to establish rapport, identify anatomy, establish an understanding of good and bad touching, determine if abuse has occurred, and conclude the examination.
 

 ¶ 5. During the examination, Katie told Dr. King that she found herself at someone named Steven’s house, and he told her about sex. Katie became nervous during the touch portion of the examination and told Dr. King that Pierce had touched her bottom with his hands as well as licked her bottom. Dr. King testified that Katie did not distinguish between her vagina or anal area but referred to both as her bottom. Dr. King’s diagnosis was child sexual abuse via cunnilingus and fondling. Katie did not have any physical marks or any type of venereal disease.
 

 ¶ 6. At trial, Katie testified that the person who licked her was named Steven Pierce, but she could not identify him in the courtroom. Pierce had grown a beard at the time of trial, which he did not have at the time of the alleged sexual abuse. Katie testified that Pierce had done something to her. She then made a red mark on a diagram of the body to indicate that the act had been done to her genital area. However, when repeatedly asked what Pierce had done, Katie replied that she could not remember. She testified that the act had been committed while she and Pierce were alone in the bedroom of his trailer. She testified that he took her pants off and used his tongue to touch her. When asked again to state exactly what Pierce did to her, she testified that she could not remember.
 

 ¶ 7. Katie’s mother testified that Katie said Steven had licked her bottom. She also stated that Katie was embarrassed by the situation and did not like to talk about it in front of strangers.
 

 ¶ 8. Pierce testified that many of the children who lived on his street came to play inside his trailer. He also stated that he did not have blinds on his windows until after the alleged incident, and he did not use his bedroom because he had no furniture in his trailer. He denied touching Katie and denied that he ever talked with her about sex.
 

 ¶ 9. After two days of trial, the jury found Pierce guilty of sexual battery.
 
 *644
 
 Pierce was sentenced to serve twenty-five years in the custody of the Mississippi Department of Corrections. From this judgment, Pierce appeals.
 

 ANALYSIS
 

 1. Was Pierce irreparably and unfairly prejudiced by inadmissible hearsay allowed at trial?
 

 ¶ 10. Pierce argues that he was prejudiced when the trial judge allowed two hearsay statements to be introduced at trial. He claims that both the testimony of Katie’s mother that Katie said Steven licked her bottom and the testimony of Dr. King regarding Katie’s statement that someone named Steven had touched her bottom were hearsay statements which should have been excluded from evidence.
 

 ¶ 11. Pierce’s attorney objected to both of those statements on the basis of hearsay. The trial judge has discretion to either accept or reject evidence offered.
 
 Austin v. State,
 
 784 So.2d 186, 193 (¶ 28) (Miss.2001). “That discretion must be exercised within the scope of the Mississippi Rules of Evidence, and reversal will only be had when an abuse of discretion results in prejudice to the accused.”
 
 Id.
 
 at 193-94 (¶ 23). Further, “[w]e are not required to reverse a case based solely upon the showing of an error in evidentiary ruling. A denial of a substantial right of the defendant must have been affected by the evi-dentiary ruling.”
 
 Jackson v. State,
 
 645 So.2d 921, 924 (Miss.1994) (quoting
 
 Newsom v. State,
 
 629 So.2d 611, 612 (Miss.1993)).
 

 a. Katie’s statement to her mother
 

 ¶ 12. Katie’s mother testified that Katie told her that Pierce licked her bottom. Pierce’s attorney objected asserting that the child’s statements were hearsay. The State responded by saying that “this is the first report and it’s not hearsay under Mississippi law.” The circuit court overruled the objection because the court believed the statement fell within an exception to the hearsay rule. Pierce now argues that there is no such first report exception to the hearsay rule and that the statement does not fall within any other exception.
 

 ¶ 13. Indeed, there is no first report exception to the hearsay rule under the Mississippi Rules of Evidence. Thus, we look to Rule 803 of the Mississippi Rules of Evidence to determine whether the statement falls under any exception. The State contends that Katie’s statement falls within the tender years exception in Rule 803(25) or, alternatively, within the present sense impression and excited utterance exceptions in Rule 803(1) and (2), respectively.
 

 ¶ 14. We first address whether the statement to Katie’s mother falls within the tender years exception. Rule 803(25) provides that:
 

 Tender years exception. A statement made by a child of tender years describing any act of sexual contact performed with or on the child by another is admissible in evidence if: (a) the court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide substantial indicia of reliability; and (b) the child either (1) testifies at the proceedings; or (2) is unavailable as a witness: provided, that when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.
 

 ¶ 15. The trial judge did not reference the tender years exception when Pierce’s hearsay objection was overruled. Instead, the trial judge allowed the statement to come into evidence based on the State’s
 
 *645
 
 incorrect assertion that there is a first report exception. Consequently, the trial judge did not conduct a Rule 803(25) hearing and made no findings on the record regarding the reliability of the statement. Thus, the statement to Katie’s mother does not fall properly under the tender years exception to the hearsay rule.
 
 See Bosarge v. State,
 
 786 So.2d 426, 436 (¶ 31) (Miss.Ct.App.2001) (holding that Rule 803(25) requires that a separate hearing be conducted outside the presence of the jury)-
 

 ¶ 16. The State also asserts that the statement was an exception to hearsay as a present sense impression, under Rule 803(1), or an excited utterance, under Rule 803(2). To be considered a present sense impression, the statement must be made while the declarant is perceiving the event or immediately thereafter. M.R.E. 803(1). The indictment alleged that the sexual battery occurred in April 2005. Katie’s mother notified the police in May 2005, just after Katie made the statement that Pierce licked her bottom. Thus, Katie’s statement was made days, possibly weeks, after the incident. Katie’s statement was not a present sense impression because Katie did not make the statement while perceiving the sexual abuse or immediately thereafter.
 

 ¶ 17. For the statement to be an exception to the hearsay rule as an excited utterance, the declarant must make the statement while under the stress of excitement caused by the event. M.R.E. 803(2). The comment to the Rule states that “[wjith respect to the time element, the issue is the duration of the excited state.” M.R.E. 803(2) cmt. There is no evidence that Katie was in an excited state when she made the statement to her mother. There is also no evidence that she was in an excited state during the days or weeks between the incident and the time of the statement. Accordingly, we find that Katie’s statement to her mother does not fit within an exception to the hearsay rule and was improperly allowed into evidence by the circuit court.
 

 ¶ 18. Despite this finding, we conclude that this error is harmless and does not warrant reversal. The statement did not result in prejudice to Pierce because, as we discuss below, the same evidence was properly admitted through Katie’s statement made to Dr. King for the purposes of medical diagnosis or treatment.
 

 b. Katie’s statement to Dr. King
 

 ¶ 19. When the accusations were made, the Panola County Sheriffs Department suggested that Katie be seen by Dr. King. Dr. King took Katie’s medical history, examined her, and diagnosed her as having suffered child sexual abuse. During the examination by Dr. King, Katie stated that she had been in Steven’s house; Steven told her about sex; and Steven touched her bottom with his hands and tongue. Pierce’s attorney objected to Dr. King’s testimony as inadmissible hearsay, but the objection was overruled. Pierce now argues that this ruling was erroneous because Dr. King’s examination was conducted solely for purposes of litigation. The State responds that the statements were made for the purposes of medical diagnosis or treatment and are admissible under Rule 803(4) of the Mississippi Rules of Evidence.
 

 ¶20. Rule 803(4) provides that statements made for purposes of medical diagnosis or treatment are an exception to the hearsay rule. “Before admitting evidence which falls in the medical diagnosis hearsay exception pursuant to M.R.E. 803(4), a two part test must be met: the declarant’s motive in making the statement must be consistent with the purposes of promoting
 
 *646
 
 treatment; and ... the content of the statement must be such as is reasonably relied on by a physician in treatment.”
 
 Rice v. State,
 
 815 So.2d 1227, 1229 (¶ 7) (Miss.Ct.App.2001) (internal citations omitted).
 

 ¶ 21. In cases of child sexual abuse, “[t]he scope of this exception has been specifically held to include the identification of the purported abuser under the theory that a part of the treatment of a sexually-abused child includes reasonable efforts to eliminate the abuser’s access to the child.”
 
 Rowlett v. State,
 
 791 So.2d 319, 321 (¶ 4) (Miss.Ct.App.2001) (citing
 
 Hennington v. State,
 
 702 So.2d 403, 415 (¶ 49) (Miss.1997)).
 

 ¶ 22. Pierce claims that the examination was made for the purposes of litigation because Katie was referred to Dr. King by the sheriffs department and because this was the only time that Dr. King treated Katie. However, the exception under Rule 803(4) applies when an alleged victim is referred to a physician to be evaluated for possible sexual abuse.
 
 Taylor v. State,
 
 836 So.2d 774, 778 (¶24) (Miss.Ct.App.2002).
 

 ¶ 23. Dr. King obtained Katie’s medical history. She used a nationally recognized protocol to examine Katie and determined that Katie was the victim of child sexual abuse. It is clear from Dr. King’s testimony that the statements made by Katie during the examination were statements made for purposes of medical diagnosis and treatment; therefore, the statements were properly admitted into evidence.
 

 2. Was the evidence sufficient to find Pierce guilty of sexual battery ?
 

 ¶ 24. Pierce asserts that the State failed to prove beyond a reasonable doubt that he inappropriately touched Katie. He claims that Katie’s testimony was not credible and that there was no evidence of sexual penetration to prove that Pierce put his tongue in Katie’s vagina, as the indictment alleged.
 

 ¶ 25. In reviewing a sufficiency of the evidence claim, the Court considers the evidence in the light most favorable to the verdict.
 
 Bush v. State,
 
 895 So.2d 836, 843 (¶ 16) (Miss.2005). Usually, if any reasonable trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we will uphold the verdict.
 
 Id.
 

 ¶ 26. First, Pierce argues that Katie’s testimony must be closely scrutinized, and if it is discredited or contradicted by other credible evidence, then the verdict must be set aside.
 
 See Maiden v. State,
 
 802 So.2d 134, 136 (¶ 5) (Miss.Ct.App.2001). However, her testimony was not discredited or contradicted by the evidence. Katie testified that she knew Pierce, and he lived in a trailer down the road from her family. She stated that Pierce took her into his trailer, pulled down her pants, and touched her with his tongue. When asked to indicate where he touched her, she placed a red mark in the genital area of a diagram of the human body. She testified that she could not remember exactly what Pierce had done except that he had done something bad to her in that area. Katie’s testimony was corroborated by the statements that she made to Dr. King about Pierce licking her bottom.
 

 ¶ 27. Katie could not identify Pierce in the courtroom; however, Pierce had recently grown a beard, which he did not have at the time of the alleged incident. Additionally, both Katie’s mother and their neighbor, Abies, identified Pierce as the person named “Steven” who lived just down the street from Katie and her family. Abies also testified that she saw Katie enter Pierce’s trailer on more than one occasion. Viewed in the light most favorable to the verdict, the evidence shows
 
 *647
 
 that Pierce is the “Steven” to whom Katie refers in her testimony.
 

 ¶28. Second, Pierce argues that the evidence is insufficient to prove the allegations in the indictment. The indictment stated that Pierce “put his tongue in [Katie’s] vagina.” Pierce claims that there is no evidence of penetration because all that Katie alleged was that he licked her bottom.
 

 ¶ 29. The indictment alleged that Pierce feloniously engaged in sexual penetration of a child under the age of fourteen pursuant to Mississippi Code Annotated section 97 — 3—95(l)(d) (Rev.2007). That section states that a person is guilty of sexual battery if the person engages in sexual penetration of a child under the age of fourteen, if the person is twenty-four or more months older than the child. There is no doubt that Katie was under fourteen years of age and that Pierce was more than twenty-four months older than Katie; thus, the issue is whether there is proof of sexual penetration. For purposes of the crime of sexual battery, sexual penetration includes eunnilingus. Miss.Code Ann. § 97-3-97(a) (Rev.2007). In
 
 Johnson v. State,
 
 626 So.2d 631, 633 (Miss.1993) (internal citations omitted), the supreme court held that “[i]n its true sense, ‘cunnilingus’ means stimulation by tongue or lips of any part of a woman’s genitalia and does not require actual penetration. Under our sexual battery statutes, however, union or contact between a person’s mouth and the genital opening of a woman is the equivalent of ‘sexual penetration.’ ” Further, the court held that slight penetration of the vulva or labia was sufficient to constitute sexual battery.
 
 Id.
 
 (citing
 
 Jackson v. State,
 
 452 So.2d 438, 440 (Miss.1984)).
 

 ¶ 30. Despite the fact that there is no physical evidence of sexual penetration, there was sufficient evidence presented for the jury to conclude that sexual penetration, in the form of eunnilingus, occurred. Katie testified that Pierce touched her with his tongue and indicated that the touching occurred in her genital area. She also told Dr. King that he had licked her bottom. Dr. King testified that, because of Katie’s young age, she did not distinguish between her vagina and anal areas. She referred to both as her bottom. We find this evidence sufficient for a jury to conclude that Pierce committed sexual battery as defined under Mississippi Code Annotated section 97-3-95(l)(d). Accordingly, this issue has no merit.
 

 3. Was the verdict against the overwhelming weight of the
 
 evidence?
 

 ¶ 31. Lastly, Pierce argues that the guilty verdict was against the overwhelming weight of the evidence. Specifically, he contends that the verdict was based on hearsay statements and Katie’s unreliable and suspicious testimony.
 

 ¶ 32. “When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.”
 
 Bush,
 
 895 So.2d at 844(¶ 18). The evidence is weighed in the light most favorable to the verdict.
 
 Id.
 
 The power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict.
 
 Id.
 
 If the verdict is against the overwhelming weight of the evidence, the proper remedy is to grant a new trial.
 
 Id.
 

 ¶33. As discussed above, Dr. King’s testimony was admissible under the hearsay exception for medical treatment. Further, the testimonies of Dr. King, Katie, Katie’s mother, and Katie’s neighbor, Abies, collectively support the jury’s ver-
 
 *648
 
 diet. During an examination by Dr. King, Katie stated that her neighbor Pierce took her into his trailer and touched her bottom. Katie testified that Pierce touched her genital area with his tongue. Both Katie’s mother and Abies identified Pierce as the “Steven” who lived near Katie. It is the duty of the jury to observe witnesses and give weight to the testimony.
 
 Smith v. State,
 
 821 So.2d 908, 910 (¶ 4) (Miss.Ct.App.2002). Where “the jury convicts a defendant upon the testimony of a prose-cutrix which is supported by other evidence, we have held that such conviction is not against the overwhelming weight of the evidence.”
 
 Riddle v. State,
 
 413 So.2d 737, 739 (Miss.1982). Thus, we find that the verdict was not contrary to the overwhelming weight of the evidence. This issue has no merit.
 

 ¶ 34. THE JUDGMENT OF THE CIRCUIT COURT OF PANOLA COUNTY OF CONVICTION OF SEXUAL BATTERY AND SENTENCE TO SERVE A TERM OF TWENTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE AND MYERS, P.JJ., CHANDLER, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. IRVING, J., CONCURS IN PART AND IN RESULT.
 

 [1]
 

 . The name of the minor child has been changed to "Katie” in this opinion to protect her identity.